Argued and submitted September 14, affirmed November 21, 1990

# LINDA MAE RARIDON,
*Petitioner,*

*v.*

# BOARD OF PAROLE,
*Respondent.*

(CA A63510)

801 P2d 842

Lawrence Matasar, Portland, argued the cause for petitioner. With him on the brief was Hoffman, Matasar & Glaeser, Portland.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were

Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Joseph, Chief Judge, and Newman and Deits, Judges.

JOSEPH, C. J.

## JOSEPH, C. J.

Petitioner seeks review of a Board of Parole decision setting her prison term at 30 months. We affirm.

Between 1984 and 1987, petitioner and her boyfriend purchased several parcels of real property on the Oregon coast. Titles to the properties, valued at close to $400,000, were placed in her name alone. She was present during most of the negotiations for the purchases. Most, if not all, of the properties became sites for the manufacture or distribution of methamphetamine. She was arrested and charged with possessing and manufacturing controlled substances in Lincoln County and in Tillamook County. ORS 475.992. She was also charged with racketeering in Tillamook County. ORS 166.720. She pled guilty to one count of possession of a controlled substance in Lincoln County and one count of possession and one count of racketeering in Tillamook County. She was sentenced to 20 years on the racketeering charge, five years consecutive to that on the Tillamook County possession charge and also five years concurrent with that on the Lincoln County possession charge.

The Board of Parole (Board) held petitioner's prison term hearing on November 24, 1989. She raised three issues, but only two are relevant on review: (1) whether the racketeering conviction should be given a crime severity rating of 4 or 5;[1] and (2) whether petitioner's criminal conduct was part of a "crime spree," which is a mitigating factor under the Board's rules.[2]

---

[1] The Board's administrative rules, OAR ch 255, provide two crime severity ratings for racketeering categorized in the following manner:

"SUBCATEGORY 1 - RATING 5:

"The principle [sic] party involved in violation of the Racketeering statute. Involvement is that of planning, directing or participating in the scheme or schemes resulting in direct profit or gain.

"SUBCATEGORY 2 - RATING 4:

"The subordinate party involved in violation of the Racketeering statute. Involvement is limited to acting as an agent or employee of the principle [sic]. There is no involvement in planning, directing or participating in the scheme or schemes in violation of this statute." OAR ch 255, Exhibit A, Part II.

[2] The Board's rules provide that it may consider as mitigation crimes that are part of a "crime spree," which is defined as:

"A set of criminal activities congruent in time or actually overlapping that are so joined by place and circumstances as to be the product of a continuous disposition or intent." OAR 255-05-005(9).

The Board made these findings:

"BOARD FINDINGS: HISTORY RISK SCORE 10; CRIME CATEGORY 5; SUBCATEGORY RATIONALE: INVOLVEMENT IS THAT OF PLANNING, DIRECTING, OR PARTICIPATING IN THE SCHEME OR SCHEMES RESULTING IN DIRECT PROFIT OR GAIN; MATRIX RANGE OF 22 TO 30 MONTHS. INMATE AGREES WITH ACCURACY OF H/R SCORE.

"* * * * *

"THE INMATE OFFERED MITIGATION UNDER ITEM J, WHICH WAS CONSIDERED AND REJECTED.

"BOARD DETERMINED THAT A 30 MONTH PRISON TERM IS APPROPRIATE; THEREFORE, ESTABLISHING A RELEASE DATE OF 10/16/1991."

Petitioner first claims that the Board erred in determining that her racketeering conviction falls within subcategory 1, crime severity rating 5, instead of subcategory 2, crime severity rating 4. Her argument centers around the coverage of the two subcategories: A "principle [*sic*] party" is, among other things, a person who *participated in* the racketeering scheme, and a "subordinate party" is someone who did *not participate in* the scheme. OAR ch 255, Exhibit A, Part II. She contends that, because she could not be guilty of racketeering unless she participated in the scheme, the rule, as written, effectively requires that *every* person convicted of racketeering be placed in subcategory 1. That, she argues, is inconsistent with the Board's intent that the "principle party" is to be treated more seriously than the "subordinate party." Petitioner argues that, because a literal reading of the rule leads to an irrational result, the rule is ambiguous, and so we must rationalize it by striking from it in both places the word "participating," thereby making it possible for petitioner to be treated by the Board as having been a subordinate party in the racketeering scheme. *See Swift & Co. v. Peterson,* 192 Or 97, 108-09, 233 P2d 216 (1951).[3] She also argues that we must hold that the Board misinterpreted the rule, as a matter of law, and must remand the matter to it.

The Board concedes that a literal reading of the rule

---

[3] Defendant supports her arguments with rules of statutory construction and constitutional arguments that are not notably relevant and do not need to be addressed.

would bring about an absurd result and that, if mere "participating in the scheme" is enough to boost the offender into subcategory 1, no one could ever be in subcategory 2. However, the Board argues that defendant's being in a position to urge the absurdity point is based on a supposition that there can be only one principal party in any racketeering scheme and that any other person who was charged as a result of the underlying criminal activity would necessarily be a subordinate party. The Board asserts that it applied the rule in a common sense way under the facts in this case and consistently with the statutory intent of the subcategorization rationale: Any persons involved in planning or directing the criminal activities are principal parties, as are participants who share the illegal proceeds, as such. It also claims that, no matter which interpretation is applied, petitioner was a principal party and the facts support giving her a severity rating of 5.

■　　ORS 183.482(8)[4] prescribes our functions in reviewing the Board's order. *See* 144.335(3); *see also 1000 Friends of Oregon v. LCDC (Lane Co.)*, 305 Or 384, 388, 752 P2d 271 (1988). Under ORS 183.482(8)(a), we would need to "find" that the Board misinterpreted the rule and that a correct interpretation requires a particular result before we could remand.

■　　We conclude that petitioner has failed to demonstrate error under ORS 183.482(8)(a). She asserts that the

---

[4] ORS 183.482(8) provides:

"(a)　The court may affirm, reverse or remand the order. If the court finds that the agency has erroneously interpreted a provision of law and that a correct interpretation compels a particular action, it shall:

"(A)　Set aside or modify the order; or

"(B)　Remand the case to the agency for further action under a correct interpretation of the provision of law.

"(b)　The court shall remand the order to the agency if it finds the agency's exercise of discretion to be:

"(A)　Outside the range of discretion delegated to the agency by law;

"(B)　Inconsistent with an agency rule, an officially stated agency position, or a prior agency practice, if the inconsistency is not explained by the agency; or

"(C)　Otherwise in violation of a constitutional or statutory provision.

"(c)　The court shall set aside or remand the order if it finds that the order is not supported by substantial evidence in the record. Substantial evidence exists to support a finding of fact when the record, viewed as a whole, would permit a reasonable person to make the findings."

Board gave her offense a severity rating of 5 because it believed it had to under the language of the rule, but nothing in the order indicates that, in fact, it did that.[5] She does not assert that a correct interpretation *compels* a particular action on remand. She only asks that we remand for the Board to reconsider her release date, recognizing that it could affirm its previous decision under a different interpretation.

■ Petitioner also assigns error to the Board's rejection of her offered mitigation, which, if accepted, would have decreased her prison term below the matrix range. She claims that, because one of the predicate offenses leading to the racketeering charge was also a crime for which she received a consecutive sentence, namely, possession of a controlled substance, her crimes meet the definition of a "crime spree." There is no merit in that. Petitioner had become more and more involved in illegal drug activity from 1982 until she was arrested. That there were many discrete parts to her activity over a long period does not qualify the whole, or even two or more parts, as a "spree."

Affirmed.

---

[5] If the Board had found that petitioner was an agent or employee but, because she had participated in the scheme, she was given a severity rating of 5, then she might have a basis on which to argue that the Board misinterpreted the rule. However, the order in this case, and its findings, do not show a misinterpretation of law. Defendant does not claim that there was no substantial evidence to support the Board's finding, and we cannot reevaluate the findings of the Board.